**McGOWEN etc., Plaintiff, v. SHAFFER et, Defendants.**

Common Pleas Court, Summit County.

No. 187507.   Decided April 6, 1953.

142

Johnson, Whitmer & Sayre, for plaintiff.
Wm. Spencer, E. Genovese, Akron, for defendants.

## OPINION

By EMMONS, J.

This is an action brought by the plaintiff on behalf of himself and others similarly situated, against the County Board of Health of Summit County, Ohio, to determine the validity of the revised sanitary code as passed by the Summit County Board of Health on November 17, 1945, amended on May 29, 1952, and December 15, 1952, and if found invalid, in whole or in part, to perpetually enjoin the defendant Board from enforcing the provisions of the code or such sections as are found to be invalid.

The court in its opinion will make a determination of the several points set out in the plaintiff's brief as follows:

FIRST: THAT THERE IS NO STATUTORY POWER UNDER WHICH THE BOARD MAY PASS REGULATIONS RESPECTING LICENSING OF MASTER AND JOURNEYMEN PLUMBERS.

Reading §§3516 and 3637 GC, together, the legislature gave the municipalities of Ohio the right to provide for the licensing of plumbers, sewer tappers and so forth, and gave the respective councils of these cities power to enforce that right by ordinance or resolution.

Sec. 1261-16 GC:

"For the purposes of local health administration the state shall be divided into health districts. Each city shall constitute a health district, and for the purposes of this act shall be known as, and hereinafter referred to, as a city health

district. The township and villages in each county shall be combined into a health district, and for the purposes of this act shall be known as, and hereinafter referred to, as a general health district."

Sec. 4420 GC provides in part:

"Except in cities having a building department, or otherwise exercising the power to regulate the erection of buildings, the board of health may regulate the location, construction and repair of waterclosets, privies, cesspools, sinks, plumbing and drains. In cities having such departments or exercising such power, the council by ordinance shall prescribe such rules and regulations as are approved by the board of health, and shall provide for their enforcement."

It is to be noted that in any event the municipal boards of health either regulate plumbing or, if there is a building department and so forth, the board of health must approve the rules and regulations as are passed as ordinances by the city council, thus, there is a control manifested by the municipal board of health, either by direct supervision of approving the ordinance adopted by council.

Referring to the general health district board, §1261-42 GC provides in part:

"All orders and regulations not for the government of the board, but intended for the general public, shall be adopted, recorded and certified as are ordinances of municipalities and record thereof shall be given in all courts of the state the same force and effect as is given such ordinances * * *"

Sec. 1261-30 GC provides in part:

"The district board of health hereby created shall exercise all the powers and perform all the duties now conferred and imposed by law upon the board of health of a municipality * * *"

By these statutes then the general health districts of Ohio are given the same rights as those given to the municipal boards of health, along with the right to make such other rules and regulations as they deem necessary.

Counsel for plaintiff contends that the word "may," as used in §4420 GC, vests a discretion in the boards of health. However, in 32 Pacific 365, Kansas City W. & N. W. R. Company v. Walker et al, the court quoted Bish. St. Crimes, second edition, paragraph 112:

" 'May be dismissed,' in section 397 of the code, should be construed to read 'shall be dismissed.' "

And in the case of Bansemer et al v. Mace et al, 18 Indiana 27:

"Syllabus 4. In the construction of statutes the word 'may'

will be construed to be synonymous with the word 'shall' where public interests and rights are concerned * * *"

The court, therefore, cannot agree that "may," as used in the statutes supra, vests a discretion, but rather does the word mean that the boards of health in each district shall pass such rules and regulations as they deem necessary for the maintenance of the health and welfare of the public.

In the dictum of **Realty Company v. Youngstown, 118 Oh St, page 215,** the court said:

"Inspection and regulation accompanied by a license fee constitute an exercise of the police power."

Ohio Attorney General's Opinion 1729, written August 11, 1952, on page 431, after citing the case of Heilman Restaurant, Inc., v. LeFever, which was case No. 1209 Lorain County, and decided by the Ninth District Court of Appeals, but unreported, the writer stated:

"There is nothing in the decision to indicate that the court in any way questioned the possibility that such licensing power might have been conferred upon the board of health by a necessary implication in the statute prescribing the power of such board."

And the writer continued:

"From all the foregoing it will be apparent that while the law is not fully settled in Ohio on the point, there is considerable authority for the proposition that boards of health may, as an incident to the regulation of an occupation which directly affects the public health, prescribe a licensing system therefor."

10 Ohio Nisi Prius, New Series, 196 Wolfe et al v. City of Columbus:

"Syllabus 2. A license exaction in a proper case may reasonably include the costs of issuing the license and the necessary or probable expense of inspection and regulation, and the exaction will be presumed to be reasonable unless the contrary appears on the face of the ordinance imposing it, or it is established by proper evidence."

This court is of the opinion that while the statutes do not expressly give the defendant Board the right to license master plumbers and register journeymen for a fee, by reason of the powers given the Board by statute there is an implied authority to so license and register, as well as the fact that it constitutes a proper and inherent exercise of police power.

SECOND. THAT THERE IS NO STATUTORY POWER TO ORDER AND REQUIRE PERMITS PREPARATORY TO THE INSTALLATION OF PLUMBING ON THE INSIDE OF A PRIVATE DWELLING.

Counsel for the plaintiff, to substantiate his theory, quotes §1261-42 GC, which provides in part that:

"The board of health of a general health district may make such orders and regulations as it deems necessary for its own government, for the public health, the prevention or restriction of disease, and the prevention, abatement or suppression of nuisances, and shall have the power to require that no human waste, animal waste or household wastes from sanitary installations within the district shall be discharged into a storm sewer, open ditch or watercourse without a permit therefor having been first secured from the board of health of the health district * * *"

It is contended that since the statute supra sets forth no other occasion for issuing permits other than for discharging waste into storm sewers and so forth, that this inclusion alone thus excludes the right to compel the issuance of other permits. This court does not think so, for this reference to permits in §1261-42 GC, does not exclude the right to order other permits. The legislative intent in this section of the law was that because of the great danger of infection and contagion such a practice referred to in this statute could only be made possible by a permit from the board of health, in order that the board might properly supervise this dangerous act. Certainly, by scrutinizing the power given the general health district board, and by reason of their police powers, the board would legally have the right to order permits to be had in the regulation and operation of their duties.

THIRD. THAT THE STATUTE DOES NOT EMPOWER THE BOARD OF HEALTH TO CHARGE A FEE FOR THEIR SERVICE, AND BY THE WORD "FEE" I TAKE TO MEAN AN INSPECTION FEE.

Sec. 1261-26 GC provides in part:

"The district board of health may also provide for the inspection and abatement of nuisances dangerous to public health or comfort, and may take such steps as are necessary to protect the public health and to prevent disease "

In the case of **Realty Company v. Youngstown,** cited in **118 Oh St** at **page 214,** Chief Justice Marshall said:

"Where the authority is lodged in a municipality to inspect and regulate, the further authority to charge a reasonable fee to cover the cost of inspection and regulation will be implied." (See Attorney General's Opinions for 1941, pages 889 and 890.)

Since the right to regulate plumbing is given the defendant Board, it follows that to regulate they must inspect, and, impliedly, the right to inspect gives the Board the right to charge for that inspection.

Thus, in so far as the first three points are concerned, and as long as the charges made therefor are not excessive, the defendant Board would have the right to license. register, issue permits for a fee, and to charge for inspection as such rights are in the exercise of proper police power and are implied by reason of the authority given the defendant Board by the statutes of the State of Ohio.

FOURTH. SUPPOSING THAT §§1261-30, 1261-42 and 4420 GC GAVE THE DEFENDANT BOARD THE POWER TO PASS REGULATIONS REFERRED TO HERE, PLAINTIFF THEN CONTENDS THAT SUCH STATUTORY AUTHORITY IS UNCONSTITUTIONAL IN THAT THE BOARDS OF HEALTH DO NOT OPERATE UNIFORMLY THROUGHOUT THE STATE AND THAT THEY ARE WITHOUT PROPER STANDARDS, AND THAT WHAT POWER IS GIVEN THEM IS A DELEGATION OF LEGISLATIVE POWER.

**Article II, Section 26, of the Ohio Constitution** provides in part:

"All laws of a general nature shall have uniform operation throughout the state * * *"

**92 Oh St 115, The Steele, Hopkins & Meredith Company v. Miller:**

"Syllabus 2. A statute is general and uniform, within the requirements of the constitution, if it operates equally upon every person and locality within the circumstances caused by the act, and when a classification has a reasonable basis it is not invalid merely because not made with exactness or because in practice it may result in some inequality."

Surely the law of local option, §6064-31 GC, and municipal ordinances controlling the sale of intoxicating liquor, and the city ordinances setting up traffic regulations result in some inequality and are definitely not in conformity one with the other, yet within the confines of the cities or townships certain conditions prevail which make it more necessary for added regulations and restrictions than in other cities or townships. These differences are justified and recognized by reason of the police power of the cities or townships.

**City of Akron, Appellee, v. Scarlera, Appellant, 135 Oh St 65:**

"Syllabus 2. An ordinance of a municipality prohibiting therein the sale of beer on Sunday is a valid local police regulation * * *"

**City of Youngstown v. Evans, 121 Oh St 342:**

"Syllabus 1: The power conferred upon municipalities to enforce within their limits local police, sanitary and other similar regulations is only limited by general laws in conflict therewith upon the same subject matter."

In **Welch v. Cleveland, 97 Oh St** at **page 314** Justice Wanamaker said:

"**Section 26, Article II, of the Constitution of Ohio** has no application to municipal ordinances. From their very language municipal ordinances are limited to the municipalities and those within its borders."

Counsel for plaintiff cites **56 Oh St 25, Gaylord et al v. Hubbard, Treasurer.** in which it was held that to provide for the appointment of a board of equalization and assessment in cities of the second grade of the first class confers on the annual board of equalization, created by the act, powers that substantially differ from those conferred upon all other annual boards of equalization in the state by the general statute upon that subject, and for that reason conflicts with **Section 26, Article II, of the Ohio Constitution** and is void.

However, in this case the general law is uniform, both for creating boards of health and conferring upon those boards uniform powers and duties, and as such are valid enactments. The boards of health are more peculiarly in a different category than most boards, for because of the danger of contagious and infectious diseases and contributing factors thereto the boards must be so legally endowed and situated that they can act with speed and independence, without regard for the other boards of health of the State, as long as there is no conflict with the general laws.

**100 Oh St 456, Leonard, Junior, v. State:**

"Syllabus 1. The measure of police power available to the government is the measure of public need, whether it apply to health, safety, protection or general welfare, except as qualified by state and federal constitution."

What is the measure of public necessity in the general board of health district?

That determination rests upon the defendant Board in this particular instance, and unless there is an abuse of discretion or fraud exercised by the board the courts will not intervene.

**99 Oh St 369, Brannon v. The Board of Education:**

"Syllabus 2. A court has no authority to control the discretion vested in a board of education by the statutes of this state, or to substitute its judgment for the judgment of such board upon any question it is authorized by law to determine.

"Syllabus 3. A court will not restrain a board of education from carrying into effect its determination of any question within its discretion except for an abuse of discretion or for fraud or collusion on the part of such board in the exercise of its statutory authority."

The plaintiff asks how public necessity as plumbing sanita-

tion may be present in Summit County and not Portage or other surrounding counties.

What the conditions are in the surrounding counties is not before the court. Whether their situation is comparable or not is of no concern. The general boards of health of those counties have the same rights and powers and duties as does the Summit County Board, and they alone pass upon the necessity of regulations and problems presented to each board, which conclusion will not be disturbed by the court unless, as indicated, there is an abuse of discretion, collusion or fraud.

Counsel for the plaintiff is of the opinion that since the operation and regulation by each board of health is not exactly the same, or in conformity with the other boards, it is unconstitutional. The general law passed by the legislature is uniform in its operation, however, in the practice of the various boards of health it may result in some inequality or inexactness, still that fact does not cause the same to be unconstitutional.

It is also claimed by the plaintiff if there is statutory authority given the boards of health to license, issue permits or charge inspection fees, then those statutes are unconstitutional in that they do not establish proper standards and are a delegation of legislative power.

The plaintiff quotes **Harmon v. State, 66 Oh St, page 249.** In this case the Court found that the "Roberts Law" was unconstitutional since the law gave the examiner a right to find whether applicants were competent and trustworthly, no standards were furnished as to the qualification and no specifications as to wherein the applicant should be trustworthy and competent, but all was left to the opinion, finding and caprice of the examiner. There were six examiners throughout the state, and the court evidenced the thought that each would have a different standard for a state engineer's license, and for allowing the examiner in each district, in effect, to make the law for his district, limited only by his will as to what constituted the standard of qualifications of engineers, would be granting legislative power to such examiner.

The Roberts Law concerned the licensing of engineers for state-wide practice, and because of the fact that each examiner, in effect, made the law, that empowered the examiners with legislative authority.

In the instant case, the operations of the general health board concerns only its particular district. The members of the Board of Health of Summit County General Health District appoint six persons to comprise a board of plumbing examiners, composed of two licensed master plumbers, two journeymen plumbers, one person representing the Board of Health

and one person the general public. The Board examines applicants as to their practical and theoretical knowledge of plumbing, house drainage, sewage disposal, and also their knowledge of the plumbing and sanitary regulations of the Summit County General Health District Board of Health.

There is no legislative authority passed on to the defendant Board by reason of these regulations. The Board is only exercising proper police power and its implied authority given it by the statutes of the State of Ohio, which are to be interpreted in a broad sense. (See 20 O. Jur., page 558.)

In **Ex-parte Company, 106 Oh St, page 50,** Justice Clark on page 57 stated:

"It is claimed further in behalf of the petitioners that the legislature is without power to delegate its law-making authority. The distinction between the power granted to legislate and the power granted to administer marks the difference between the contention urged and the true question herein to be considered. It is sufficient that the power of the legislature to authorize administratrive authority on the parts of boards of health and subdivisions of the state and to authorize the adoption of such instruments of its choice of rules and regulations affecting public health, including the power to detain and quarantine, has been considered and upheld in People v. Tait, 261 Illinois 197; State v. Norman, 76 New Hampshire 541; Highland v. Schultz, 123 Michigan 360; City of Taunton v. Taylor, 116 Massachusetts 254; Isenhour v. State, 157 Indiana, 517, and so forth * * *

That the legislature in the exercise of its constitutional authority may lawfully confer on boards of health the power to enact sanitary ordinances having the force of law within the district over which their jurisdiction extends, is not an open question."

Blue v. Beech, 155 Indiana 121:

"Syllabus 1. Section 6711 et seq. Burns 1894, authorizing and empowering the state board of health to adopt rules and bylaws to prevent the spread of contagious and infectious diseases is not a delegation of legislative authority in violation of Article IV paragraph 1 of the constitution vesting the legislative authority of the state in the general assembly."

Polinsky v. People of New York, 73 New York 65:

"Syllabus 2. The legislature in the exercise of its constitutional authority may confer upon boards of health the power to enact sanitary ordinances having the force of law, within the districts over which their jurisdiction extends."

The court is of the opinion, after a perusal of the cases herein referred to and from the evidence adduced during the

trial, that there was a proper standard for qualifications for licensing and registering and for governing health regulations in this County, and that whatever authority was granted to the defendant Board was not a delegation of legislative right.

FIFTH. THAT THE REGULATIONS AS PASSED ARE ARBITRARY, UNREASONABLE AND DISCRIMINATORY AND ARE PASSED BY THE BOARD OF HEALTH WITHOUT RE-GARD TO THE RIGHTS OF THE PLAINTIFF, AND THAT THEY VIOLATED THE LETTER AND SPIRIT OF THE FOUR-TEENTH AMENDMENT OF THE FEDERAL CONSTITUTION AND **ARTICLE I, SECTION I, OF THE OHIO CONSTITUTION.**

**Article I, Section I, of the Ohio Constitution** provides:

"All men are by nature free and independent and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring and possessing and protecting property, and seeking and obtaining happiness and safety."

**William et al v. Scudder et al, 102 Oh St, at page 315.** Justice Wanamaker stated:

"It has long been a uniform and well settled doctrine that the right of liberty of contract, growing out of one's trade, occupation or profession is not paramount to the right of public security, morals, safety and welfare, so that the police power has for its basis not only the public health but the right of regulating those occupations or professions which most intimately and vitally affect the public morals, safety and welfare."

It is the law that to justify the state in thus interposing its authority in behalf of the public it must appear, (1) that the interest of the public generally, as distinguished from those of a particular class, require such interference; and (2) that the means are reasonably necessary for the accomplishment of the purpose and are not unduly oppressive against the individual.

**14 Oh Ap 182, Lenhart et al v. Hanna et al:**

"Syllabus. Police powers are not superior to constitutional limitation, and legislative action based on such powers is subject to judicial review, and where action thus taken is unreasonable and oppressive, confiscatory and in contravention of the right to carry on an occupation without due regard to law and health of the community, injunction lies against its enforcement."

**106 Oh St, page 50, Company Ex-parte,** Justice Clark at page 55 said:

"The right of the state to the exercise of its police power to subject persons and property to reasonable and proper re-

straints in order to secure the general comfort, health and prosperity of the state, is no longer open to question."

Counsel for plaintiff argues that plumbing is not a trade as warrants such supervision as the defendant Board has seen fit by their rules and regulations to impose upon the trade.

**State of Ohio v. Gardner, 58 Oh St,** at **page 607,** Justice Spears said:

"True it is that the business of a plumber is not ranked with the learned professions and that much of his work is mechanical, merely calling for the exercise of deftness of hands rather than the possession of scientific knowledge, yet a certain degree of training and experience is absolutely necessary to render one intelligent as to the groundwork of his calling as well as competent and skilful in its exercise.

"He is required to put into our dwellings and public buildings tanks, pipes, traps, fittings and fixtures for the conveyance of gas, water and sewage which require, among other essentials, the keeping out and protection against gases which are destructive of health and, not infrequently, of life itself; that it is of the highest importance that the drainage and sewage of our public buildings and private tenements should be as skilfully planned and executed as the modern science admits, would seem not open to question. And surely it is reasonable to suppose that one who has been educated to understand the scientific principle necessarily involved in the work of this character, and to comprehend the reasons and teaching of experience upon which it is based, and the evil results which may follow neglect to observe it, will be more likely to provide the needful safeguards than one who is ignorant upon this subject."

Due to the nature generally of the work of plumbers and their close connection with sanitation, and the further fact that the general health is largely dependent upon their work, then for the protection of the public, who would be the victims of inferior and faulty installations, the defendant Board, in the exercise of its police power and by reason of its implied statutory rights, are acting within their legal rights and powers in ascertaining the fitness of those connected with the occupation of plumbing through licensing and registering, to determine the quality of the work of the members of the trade by inspection, and to control the installation of plumbing by permits, and by so doing the defendant Board is not infringing upon the constitutional rights of the plaintiffs.

SIXTH. THAT THE REGULATIONS AS PASSED ARE DESIGNED TO PRODUCE REVENUE FOR THE DEFENDANT BOARD AND ARE UNCONSTITUTIONAL, BEING IN VIOLA-

TION OF **ARTICLE XII, SECTION 5, OF THE OHIO CON-
STITUTION**, IN THAT THE FEES CHARGED ARE EXOR-
BITANT AND NOT DESIGNED TO DEFRAY THE COST OF
THE ISSUANCE OF PERMITS OR LICENSES BUT TO PRO-
DUCE REVENUE FOR THE GENERAL FUND OF THE DE-
FENDANT BOARD.

**Article XII, Section 5, of the Ohio Constitution** provides that:

"No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied."

Wolfe v. City of Columbus, cited supra:

"Syllabus 3. The Columbus sewer tappers ordinance is not open to objection on the ground that it is unfair because of interference with a particular trade, nor is the fee of Five Dollars with the requirement that a bond be executed in the sum of Five Hundred Dollars to save the City harmless from negligence on the part of the licensee unreasonable and excessive."

**Jackson v. Copelan, Chief of Police, 50 Oh Ap, at page 419,** Judge Ross held:

"An ordinance having fixed the charge, the same will be presumed to be reasonable until the contrary is shown."

A similar rule prevails in so far as charges are made for permits, inspection and the reasonableness of license and registration fees.

Whether a fee is arbitrary, unreasonable or discriminatory is a matter of proof. The court cannot sit in judgment as to the reasons and discretion of the Board of Health in the enactment of these charges and thereby overrule their decisions, unless there is an abuse of discretion or fraud or unreasonableness of the amount of fees charged, and such has not been proved, nor are the charges discriminatory for they are alike for each of a class within the general Board of Health district.

In the case of the **Prudential Co-operative Realty Company v. City of Youngstown, 118 Oh St,** Chief Justice Marshall at **page 214** and **215** said:

"The fee charged must not, however, be grossly out of proportion of the cost of inspection and regulation, otherwise it would operate as an excise tax, which is clearly beyond the power of the municipality to impose. It is not to be expected that fees can be charged which will exactly balance the cost and expense and a reasonable excess will not operate to invalidate the ordinance. * * *. Whether or not the surplus of fees over expenses is sufficient to render an ordinance invalid is a mixed question of law and fact. If the excess is small

no question of invalidity is present, if it is enormously large it becomes a clear case of operating as an excise tax. Between these extremes there must be a twilight zone where cases must be decided upon their individual facts and where no controlling rule can be declared. The court of common pleas in this case has held the fees to be reasonable. The court of appeals in its opinion expressed a different notion but did not reverse the case. While to this court the excess seems to be large, and it may be suggested that if the fees continue to be large and the expenses small a serious question might arise in future cases as to the validity of the ordinance on the ground of excessive charges."

In this case, **118 Oh St 204**, there was a stipulation that the ordinance authorized a charge of Five Dollars for the first lot in each plat and Three Dollars for each and every lot in addition thereto. It was further stipulated that for the year 1923 the total expenses of the planning commission amounted to $1372.00 and the fees collected were $8868.00. For 1924 the expense was $2850.00 and the fees $5700.00, and for 1925 the expense was $2950.00 and the fees $6800.00. Yet in the face of the difference between the expenses and income for the years of 1923, 1924 and 1925 the Supreme Court elected to treat this matter as in the twilight zone and held the fees not to be excise taxes but rather a license fee for inspection and regulation.

The defendant Board knew much better than anyone else what operations are maintained by the plumbing department thereof and how far reaching these tentacles extend. and the court, on the proof offered here, cannot substitute its judgment as to the expenditures and estimations for that of the defendant Board. In the instant case we have the testimony of the plaintiff's accountant which showed excess income over operating expenses for 1952 in the sum of $6215.58, while there was testimony that the plumbing department of the defendant Board showed a deficit in 1952 of some $3,000.00. The testimony also revealed that the defendant Board has an estimated budget for 1953 for $19,801.24 to cover expenses for the plumbing department of the defendant Board, while their estimated revenue is $18,575.00, leaving an estimated deficit for 1953 of $1226.04.

**State ex rel v. Schneider, 103 Oh St at page 498,** Judge Matthias said:

"The action of a public officer or of a board within the limits and the jurisdiction conferred by law is not only presumed to be valid but it is also presumed to be in good faith and in the exercise of sound judgment. Before a court will take cognizance of a claim that the action of such officers

or board is unlawful, arbitrary, unreasonable or of such character as to constitute an abuse of discretion facts must be set forth which would warrant such conclusion."

There was an attempt made during the trial to prove that the fees assessed against the plumbers of Summit County District Board of Health were, in fact, used to defray a great amount of the general expenses of the defendant Board, and that therefore those fees amounted to a tax.

If the court can by reasonable interpretation of the law do that which would continue the orderly processes of government, then that is the court's duty. From the cases cited and the evidence adduced the court is of the opinion that the defendant Board, by charging fees for licenses, permits and inspections, is not operating unconstitutionally but is within the twilight zone as referred to in **118 Oh St, pages 214** and **215,** and that if future increases are levied a question may well be presented as to whether this assessment is not, in fact, a tax. Since the fees charged do not amount to an excise tax in this instance the contention of the plaintiff is not well taken in respect to the sixth point which is raised.

SEVENTH. THAT THE AMENDMENT IS NOT EMERGENCY LEGISLATION AND IS NOT ADOPTED SO AS TO CONFORM TO THE CONSTITUTIONAL REQUIREMENTS OF EMERGENCY LEGISLATION AND AS SUCH IS VOID.

**State ex rel. Durbin v. Smith, 102 Oh St at page 106,** in a per curiam decision the court said:

"Indulging the presumption in favor of the legislation, and in the absence of positive judicial knowledge to the contrary, the court is bound to accept as true the reasons assigned by the legislature for making the act in question an emergency law."

**In 26 Oh Ap 265, State ex rel. Hile v. Cleveland et al,** it was held that an emergency ordinance passed pursuant to the requirements of a city charter, the emergency character being declared, becomes effective, and the question of its emergency as determined by counsel will not be inquired into by the court.

Section 4, amending and supplementing sections 19, 20, 21, 22, 23, 24 and 25 of the plumbing code, chapter 2, of the revised sanitary code of Summit County General Health District, and declaring an emergency, is as follows:

"It is hereby declared that the foregoing resolution is an emergency measure in that the same provides for the immediate preservation of the public health by providing proper rules and regulations for the installation and inspection of plumbing; examining and registering of master plumbers and

journeymen so as to insure the good general health of the inhabitants of Summit County General Health District, and to prevent conditions or events endangering the public health by improper installation of plumbing in said district, and by reason thereof this resolution shall take effect and be in force from and after its passage."

102 Oh St 591, cited supra, at page 598 the court said that the rules for the passing of an emergency measure are as follows:

First, that emergency laws must receive the requisite number of votes;

Second, the reasons for the necessity must be set forth in one section of the law;

Third, it must be based on roll call.

All of these prerequisites the court finds in the instant case have been complied with. It is the law that if the regulations of the board do not set forth reasons for the necessity of such emergency the regulations are not properly adopted as emergency ones. However, the court is of the opinion that the reasons were set forth declaring them to be an emergency, and the court is not allowed to inquire into those reasons and thereby substitute its reasoning for that of the board. And even though the court could inquire, it is apparent from the evidence that the reasons set forth make the emergency obvious and necessary.

The implied powers of a board of health should be given a construction in the broadest sense, and police powers exercised by the board of health should be liberally construed. Such constructions or interpretations are so made because boards of health, as with the defendant Board, are the sentinels guarding the people from the danger of diseases which might well develop into an epidemic. The court does not say that by reason of this fact the health boards should be given dictatorial powers or placed in a position wherein their rules and regulations might be oppressive and confiscatory, but the actions of such boards should be construed in a most favorable light within the realm and limits of reasonableness.

In conclusion this court is of the opinion that the rules and regulations of the defendant Board are reasonable, constitutional and necessary for the preservation of the health of this community, and that the fees charged are not excessive to the extent that they could be considered taxes, that an emergency did exist, and that all the issues raised by the pleadings are resolved in favor of the defendant Board.